UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\*\*\*

LORETTA PUTSCHER,

    Plaintiff,

vs.

SMITH'S FOOD & DRUG CENTERS, INC.,

    Defendant.

Case No. 2:13–cv–1509-GMN-VCF

**ORDER**

    This matter involves Loretta Putscher's slip and fall at a local Smith's Food & Drug Centers store. In the motion before the court, Putscher requests two forms of relief. First, Putscher requests an order compelling Smith's to disclose surveillance footage from 935 days after the slip and fall. (*See* Pl.'s Spoliation Mot. (#12) at 13[1]). Second, Putscher requests sanctions for Smith's alleged spoliation of two reels of surveillance footage from the day of her slip and fall. (*See id.* at 15). For the reasons stated below, Putscher's requests are denied.

**BACKGROUND**

    For the purposes of Putscher's motion, the relevant facts include: (1) the circumstances surrounding Putscher's slip and fall; (2) an overview of the discovery dispute; and (3) a review of the arguments made during the court's June 18, 2014 hearing. Each is discussed below.

**I.**     **Loretta Putscher's Slip and Fall**

    On July 14, 2011, Loretta Putscher went shopping at Smith's Food. (Compl. (#1-2) at ¶ 12). She walked through aisle twenty-one, along rows of salad dressing, and towards the produce department.

---

[1] Parenthetical citations refer to the court's docket.

(*Id.*); (Pl.'s Spoliation Mot. (#12) at 4:6). Without warning, she slipped, fell, and found herself lying next to a display of russet potatoes. (Compl. (#1-2) at ¶ 12); (Herbias Depo. (#13-1) at 22:5–7). There were no witnesses.

A liquid substance—probably water from the nearby refill station—had been left on the tile floor. (Pl.'s Spoliation Mot. (#12) at 4:10). Putscher attempted to get back up; but she fell again. (*Id.* at 4:9). She was hurt, and felt an immediate pain in her right arm and hand. (*Id.*)

An employee in Smith's liquor department reported the fall. (Herbias Depo. (#13-1) at 21:5–10). A manager, Jessie Herbias, appeared and asked Putscher if she was okay. (*Id.* at 61). She stated that she was "fine," did not want to complete a report, and was in a hurry to leave. So, she left. (*Id.*)

Nonetheless, Herbias investigated. Under Smith's policy, accidents must be investigated, and an incident report completed whenever an accident occurs. (*See* Mins. Proceedings #20). Herbias discovered a puddle of water on the floor where Putscher fell. (Herbias Depo. (#13-1) at 27); (*see also* Incident Report (#12-1) at 1) ("*How large an area did it cover?* 2 floor tiles – a small line of water"). Because no water is sold in that area, Herbias guessed that the water came from a water-refill station thirty or forty feet away and that it ended up on the floor near the produce after Putscher or another customer spilled their own bottle of water in the produce department. (*Id.*) ("water from what seemed from water refill"); (*see also* Herbias Depo. (#13-1) at 27) (discussing the possible cause of the spill).

Herbias recorded this information in Smith's preprinted incident-report form. However, Herbias failed to complete the form. One of the form's preprinted questions read: "Is there video evidence? Y / N." (Pl.'s Spoliation Mot. (#12) at 19:10). Neither option was circled. Herbias then signed her name on the bottom of the form, above a bolded and italicized notice, stating: "This report is being prepared in anticipation of litigation under the direction of legal counsel. It is confidential and is not to be released

to any person unless approved by legal counsel and authorized by a member of Kroger[2] management with such authority." (Incident Report (#12-1) at 1).

Forty-four days later, on August 24, 2011, Putscher's attorney sent Smith's insurance carrier a letter notifying the store of Putscher's legal claim. (Pl.'s Reply (#14) Exhibit 1).

## II.   The Discovery Dispute

After reviewing Smith's discovery and deposition testimony, Putscher asserts that Smith's failed to preserve two pieces of relevant evidence: surveillance footage of her slip and fall and surveillance footage of the area surrounding the produce department and water-refill station. There is no question that footage of the area surrounding the produce department and water-refill station existed, but it is unclear whether any footage of Putscher's slip and fall ever existed.

Some evidence suggests that surveillance footage of Putscher's slip and fall did exist. For instance, Smith's Rule 30(b)(6) deponent, Suzanne Martin, testified, "I believe that some of the cameras do capture some of the footage in the – on the floor in the produce department." (Pl.'s Spoliation Mot. (#12) at 8:13–15). When asked why surveillance footage was not preserved, Martin replied: "I do not [know]." (*Id*. at 10:12). Putscher also filed pictures of the interior of the Smith's where she fell. The pictures show surveillance cameras that might have captured her slip and fall.

Smith's answers to written discovery also suggest that footage Putscher's slip and fall may have existed. When asked how long Smith's preserves surveillance footage, Smith's answered: "The recorders typically maintain video between 21–90 days, depending on the available space of the hard drive. If the video is not burned to a DVD within the time period mentioned above, the system will delete it." (Def.'s Opp'n (#13) at 7:8–11) (citing answer number eight).

---

[2] Smith's Food is a subsidiary of Krogers.

However, other evidence suggests that surveillance footage never existed. For instance, Smith's loss prevention manager, Jason Grice, executed an affidavit in support of Smith's opposition. It states:

> On July 14, 2011, there were no surveillance cameras that were trained on the area where plaintiff slipped and fell. As such, there would not have been video surveillance of the slip and fall accident. There also were no surveillance cameras trained on or that had a short of the water refill station located in the Service Deli of the store.

(Grice Aff. (#13-3) at ¶¶ 5–6). Grice also testified that on July 14, 2011, when Putscher fell, each DVD unit had one terabyte of available storage. This means that the entire store's surveillance footage would be deleted in approximately 21–28 days. (*Id*. at ¶ 8).

Putscher believes that one piece of evidence may resolve this ambiguity. On February 3, 2014, Putscher conducted a site inspection of the store where the accident occurred. During the inspection an expert conducted coefficient of friction testing where Putscher fell. If surveillance footage from February 3, 2014, depicts Putscher's expert conducting a coefficient of friction test, then—Putscher argues—her slip and fall may have been caught on film.

### III. The June 18, 2014 Hearing

On June 18, 2014, the court held a hearing on Putscher's motion. Smith's conceded that whatever surveillance footage may have once existed is now lost because Smith's video recording system overwrote footage from the day of Putscher's slip and fall before Smith's received Putchser's letter of representation. Arguments turned to the question of whether the court should impose sanctions against Smith's for the loss of the surveillance footage. Putscher asserted that sanctions should be imposed because Smith's destroyed two pieces of relevant evidence.

First, Putscher argued that Smith's should be sanctioned for destroying evidence of Putscher's slip and fall because Smith's was put on notice of Putscher's claim on the day she fell. In support of this argument, Putscher relied on the printed text on the bottom of Smith's incident-report form, which states: "[t]his report is being prepared in anticipation of litigation under the direction of legal counsel."

(Incident Report (#12-1) at 1). Additionally, Putscher cited *Aiello v. Kroger Co.*, No. 2:08–cv–01729–HDM–RJJ, 2010 WL 3522259, at *3 (D. Nev. Sept. 1, 2010) for the proposition that a grocery store has notice—and therefore a legal duty to preserve evidence—as soon as it completes an incident report.

Second, Putscher argued that Smith's should be sanctioned for destroying evidence of the area surrounding the produce department and water-refill station, not because the footage would have depicted Putscher's slip and fall, but because (1) Smith's knew that Putscher slipped on water that from the refill station, (2) had notice of this fact on the day of Putscher's fall, and (3) the footage might have depicted (a) the cause of the spill, (b) the time of the spill, and (c) whether Smith's conducted timely sweeps of the area.

## DISCUSSION

The parties' filings present three questions: (1) whether Smith's should be compelled to produce surveillance footage of the February 3, 2014 expert inspection; (2) whether Smith's should be sanctioned for destroying evidence of Putscher's actual slip and fall; and (3) whether Smith's should be sanctioned for destroying evidence of the area surrounding the produce department and water-refill station from the day of Putscher's slip and fall. Each question is addressed below.

**I.     Whether Smith's Should Produce Surveillance Footage from February 3, 2014**

Putscher's first request for relief asks the court to determine whether Smith's should be compelled to produce surveillance footage of the February 3, 2014 expert inspection of the area where Putscher fell. Putscher argues that this footage is discoverable because it will show (1) the jury how the coefficient of friction test was performed and (2) whether the camera could have captured Putscher's slip and fall. Smith's asserts that the footage is simply irrelevant. Before addressing these arguments, the court reviews the relevant law.

### A. *Legal Standard*

Federal Rule of Civil Procedure 26(b)(1) governs discovery's scope and limits. In pertinent part, Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Rule 26 defines relevant information as any information that "appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Rule 26 is liberally construed. *Seattle Times, Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).

While broad, the scope of discovery under Rule 26 is limited. Rule 26(b)(2)(c) states that the court "must" limit discovery if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit."

The party resisting discovery carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The objecting party must show that the discovery request is overly broad, unduly burdensome irrelevant. *Teller v. Dogge*, No. 2:12-cv-00591-JCM, 2013 WL 1501445 (D. Nev. Apr. 10, 2013) (Magistrate Judge Foley) (citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253–4 (S.D. Ind. 2000).

The court has broad discretion in controlling discovery, *see Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and in determining whether discovery is burdensome or oppressive. *Diamond State Ins. Co. v. Rebel Oil. Inc.*, 157 F.R.D. 691, 696 (D. Nev.1994). The court may fashion any order which justice requires to protect a party or person from undue burden, oppression, or expense. *United States v. Columbia Board. Sys., Inc.*, 666 F.2d 364, 369 (9th Cir.1982) *cert. denied*, 457 U.S. 1118 (1982).

### B. *Putscher's Motion to Compel is Denied*

Putscher argues that footage of the February 3, 2014 expert inspection is discoverable because it will show the jury how the coefficient of friction test was performed and whether Smith's surveillance cameras could have captured Putscher's slip and fall. The court disagrees.

As an initial matter, the court notes that it is unpersuaded by Smith's argument that the surveillance footage of the February 3, 2014 inspection is irrelevant. Relevance, especially in the context of discovery, is broad. *See* FED. R. CIV. P. 26(b). Here, the surveillance footage of the February 3, 2014 inspection is relevant because it could show what the same cameras might have captured when Putscher slipped and fell. Discovering what a camera might have captured is, contrary to Smith's assertion, "reasonably calculated" under Rule 26(b).

However, the court denies Putscher's discovery request because it is duplicative and its "burden or expense . . . outweighs its likely benefit." FED. R. CIV. P. 26(b)(2)(C)(i), (ii). The question before the court is not whether the cameras could have captured Putscher's slip and fall but whether they did, in fact, capture her slip and fall. Smith's Rule 30(b)(6) deponent, Suzanne Martin, testified that the cameras could have captured the fall as did Smith's loss prevention manager, Jason Grice. (Pl.'s Spoliation Mot. (#12) at 8:13–15); (Grice Aff. (#13-3) at ¶¶ 5–6). There is no dispute about this fact. The question is whether the cameras did, in fact, capture Putscher's slip and fall. Surveillance footage from 935 days after the slip and fall will not resolve this question.

Similarly, there is no dispute about how Putscher's expert performed the coefficient of friction test. Accordingly, the surveillance footage of the February 3, 2014 inspection—while relevant to show what could be captured or how the test was performed—is duplicative of better evidence already in the record. This evidence includes Suzanne Martin's deposition, Jason Grice's affidavit, and Putscher's expert report. As a result, the court finds that "the burden or expense of the proposed discovery

7

outweighs is likely benefit" because the February 3, 2014 footage will shed no new light on the underlying questions. *See* FED. R. CIV. P. 26(b)(2)(C)((ii).

## II.     **Whether Smith's should be Sanctioned for Destroying Footage of Putscher's Slip and Fall**

Having addressed Putscher's motion to compel, the court turns to the second question: whether Smith's should be sanctioned for destroying evidence of Putscher's slip and fall. Putscher argues that Smith's should be sanctioned because all footage from the day of the fall was destroyed and Suzanne Martin, Smith's Rule 30(b)(6) deponent, testified that footage of the fall most likely existed. The court begins its analysis of Putscher's motion by reviewing the law governing the spoliation of evidence.

### A.     *Legal Standard*

Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *United States v. Kitsap Physicians Svs.*, 314 F.3d 995, 1001 (9th Cir. 2002) (citing *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)) (a party engages in spoliation "as a matter of law only if they had 'some notice that the documents were potentially relevant' to the litigation before they were destroyed"). A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. *Kitsap Physicians Serv.*, 314 F.3d at 1001; *In re Napster*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (citing *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556–57 (N.D. Cal. 1987) (noting, "[a]s soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action").

There are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who "fails to obey an order to provide or permit discovery." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citing

*Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1337 (9th Cir. 1985); FED. R. CIV. P. 37(b)(2)(C). Federal courts sitting in diversity jurisdiction apply federal law when addressing issues of spoliation of evidence. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993) (applying federal law when addressing spoliation in diversity litigation); *accord Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).

The decision to impose spoliation sanctions is discretionary. *See Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992); *Siegal v. Am. Honda Motor Co.*, 921 F.2d 15, 17 (1st Cir. 1990). When determining whether to impose discovery sanctions for spoliation, the threshold question that the court must decide is whether relevant evidence existed. *See, e.g., Patton v. Walmart*, 92 Fed. R. Evid. Serv. 1300, No. 12–cv–2142, 2013 WL 6158467, at *3 (D. Nev. Nov. 30, 2013) (citing *Epstein v. Toys-R-Us Delaware, Inc.*, 277 F. Supp. 2d 1266, 1276–77 (S.D. Fla. 2003) (holding that to prevail on a motion for sanctions for the destruction of a videotape, the moving party must establish facts indicating that the video existed)). If no relevant evidence existed, then the motion for spoliation is moot. If, however, relevant evidence did exist, then the question is whether the nonmoving party had a duty to preserve the evidence.

### B.  *Putscher's Motion for Spoliation is Denied*

Putscher argues that Smith's should be sanctioned for destroying evidence of her slip and fall for two reasons. First, Putscher contends that evidence of the slip and fall existed because Smith's Rule 30(b)(6) deponent, Suzanne Martin, testified that a camera may have captured Putscher's fall. Second, Putscher asserts that Smith's duty to preserve the evidence arose on the day she fell because Smith's incident report altered Smith's of Putscher's claim. The court disagrees.

1. <u>No Evidence of the Slip and Fall Existed</u>

The preponderance of the evidence demonstrates that no surveillance footage of Putscher's slip and fall ever existed. Some of the evidence may be construed as indicating that surveillance footage of the fall existed. For instance, Suzanne Martin testified, "I believe that some of the cameras do capture some of the footage in the – on the floor in the produce department." (Pl.'s Spoliation Mot. (#12) at 8:13–15). This is consistent with Putscher's claim that a camera might have captured her fall.

Additionally, Smith's answers to written discovery leave open the possibility that surveillance footage of the fall may have existed. When asked how long Smith's preserves surveillance footage, Smith's answered: "The recorders typically maintain video between 21–90 days, depending on the available space of the hard drive. If the video is not burned to a DVD within the time period mentioned above, the system will delete it." (Def.'s Opp'n (#13) at 7:8–11) (citing answer number eight).

However, this evidence is speculative. Neither Martin's testimony nor Smith's answers to interrogatories demonstrate anything more than the mere possibility that surveillance footage of the slip and fall could have existed. Additionally, although Martin's testimony and Smith's answers to interrogatories can be construed as indicating that relevant surveillance footage may have existed, all of the evidence in the record can be consistently interpreted as indicating that no relevant surveillance footage ever existed.

Martin's statement, "I believe that some of the cameras do capture some of the footage in the – on the floor in the produce department," is consistent with the proposition that no relevant surveillance footage ever existed. Similarly, Smith's statement in its answers to interrogatories is consistent with the proposition that no relevant surveillance footage ever existed. Additionally, the testimony of Jason Grice, Smith's loss prevention manager, is consistent with the proposition that no footage ever existed.

He stated, "[o]n July 14, 2011, there were no surveillance cameras that were trained on the area where plaintiff slipped and fell." (Grice Aff. (#13-3) at ¶¶ 5–6).

In *Epstein v. Toys-R-Us*, the court stated that to prevail on a motion for spoliation of evidence, the movant "must at a minimum point to some facts indicating that such a video exists." 277 F. Supp. 2d 1266, 1276–77 (S.D. Fla. 2003). Here, there are no facts indicating that surveillance footage of Putscher's slip and fall ever existed. Accordingly, the court denies Putscher's motion for sanctions.

2. <u>Smith's Incident Report did not Trigger its Duty to Preserve</u>

Before moving on, the court briefly discusses Putscher's argument that Smith's duty to preserve surveillance footage of the slip and fall arose when Smith's completed an incident report. As previously mentioned, the duty to preserve arises when a party has "some notice that the [evidence was] potentially relevant to the litigation." *Kitsap Physicians*, 314 F.3d at 1001; *In re Napster*, 462 F. Supp. 2d at 1067; *Cont'l Cas. Co. v. St. Paul Surplus Lines Ins*. Co., 265 F.R.D. 510, 533 (E.D. Cal. 2010).

Relying on *Aiello v. Kroger Co*., 2010 WL 3522259, Putscher contends that a grocery store has notice, and therefore a legal duty to preserve evidence, as soon as it completes an incident report that contains a legal notice. Here, Smith's incident report contained preprinted language, stating: "[t]his report is being prepared in anticipation of litigation under the direction of legal counsel." (Incident Report (#12-1) at 1). Consequently, Putscher concludes that this language imposed a duty to preserve under *Aiello*, 2010 WL 3522259.

The court disagrees. Stock language on the bottom of a preprinted incident report—without more—does not trigger a duty to preserve. One sentence in *Aiello* may be read as standing for the proposition that an incident report alone imposes a duty to preserve. *See Aiello*, 2010 WL 3522259, at *3 ("[I]mmediately after the incident, Aiello filled out an accident report which, arguably, is sufficient to put Food 4 Less on notice of potential litigation.").

11

However, *Aiello*'s holding relied on additional facts. In *Aiello*, the Honorable Robert J. Johnston, U.S. Magistrate Judge for the District of Nevada, found that Kroger had a duty to preserve for three reasons: (1) the plaintiff completed an incident report; (2) the store manager extracted, reviewed, and mailed surveillance footage to its Risk Management Department; and (3) the store manager testified that she mailed the surveillance footage to the Risk Management Department because "it would cover us." *Id*.

Putscher's slip and fall presents a very different set of facts. Unlike *Aiello*, Putscher refused to complete an incident report. Unlike *Aiello*, it is unclear whether anyone reviewed surveillance footage of Putscher's slip and fall. (*See* Pl.'s Spoliation Mot. (#12) at 19:10) (stating that Smith's form read, "Is there video evidence? Y / N," but that neither option was selected). And, unlike *Aiello*, no one at Smith's made any statement suggesting that the surveillance footage would protect them from liability.

Finally, the court notes it would be inappropriate to adopt Putscher's proposed evidentiary rule. If the court held that stock language on the bottom of a preprinted form imposes a duty to preserve, then prudent store owners who take care to create incident-report forms and preserve evidence would be held to a higher standard than unscrupulous store owners who do not take care to document customer injuries or preserve evidence. Adopting Putscher's proposed rule would also be futile. Store owners aware of the rule could avoid legal liability by deleting the relevant language. This, in turn, would result in fewer store clerks preserving relevant evidence, which conflicts with the premise of federal practice and procedure. *See* Fed. R. Evid. 102 ("These rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination.").

**III.     Whether Smith's should be Sanctioned for Destroying Footage of the Produce Department and Water-Refill Station**

Putscher's motion presents a third question: whether Smith's should be sanctioned for destroying evidence of the area surrounding the produce department and water-refill station. Putscher argues that Smith's should be sanctioned for destroying this evidence, not because the footage would have depicted Putscher's slip and fall, but because (1) Smith's surmised that Putscher slipped on water that from the refill station, (2) had notice of this fact on the day of Putscher's fall, and (3) the footage might have depicted (a) the cause of the spill, (b) the time of the spill, and (c) whether Smith's conducted timely sweeps of the area. The court disagrees for two reasons.

First, Putscher's argument that Smith's duty to preserve arose when Smith's completed the incident report is incorrect. (*See supra* § II). Rather, Smith's duty to preserve arose when it received Putscher's letter of representation. However, this occurred on August 24, 2011, forty-four days after Putscher's slip and fall, and some twenty days after Smith's had already deleted the footage. (*See* Pl.'s Reply (#14) Exhibit 1); (*See* Grice Aff. (#13-3) at ¶ 8) (stating that on July 14, 2011, when Putscher fell, each DVD unit had one terabyte of available storage, meaning that the entire store's surveillance footage was overwritten 21–28 days after Putscher's the fall). Accordingly, no spoliation occurred because Smith's duty to preserve arose after the surveillance footage was destroyed in the ordinary course of business. *See United States v. $40,955.00*, 554 F.3d 752, 758 (9th Cir. 2009) (explaining that no spoliation occurs when the accused party destroys or disposes of evidence in the ordinary course of business); *Kitsap Physicians Serv.*, 314 F.3d at 1001 (stating the same).

Second, the court's decision to impose spoliation sanctions is discretionary. *Glover*, 6 F.3d at 1329; *Unigard Sec. Ins. Co.*, 982 F.2d at 368; *Siegal*, 921 F.2d at 17. Here, even if Smith's had a duty to preserve surveillance footage of the area surrounding the produce department and water-refill station,

the court is unpersuaded that the footage's purported probative value was great enough to warrant the imposition of sanctions.

Putscher argues that the lost footage might have depicted the cause of the spill, the time of the spill, and whether Smith's conducted timely sweeps of the area near her fall. The court agrees with Putscher that the lost surveillance footage might have depicted these things. However, whether the lost surveillance footage actually depicted the cause of the spill or the time of the spill is speculative. Both parties agree that the area depicted in the lost footage would not have included the water refill station or the location of Putscher's fall. (*See* Mins. Proceedings #20). The lost footage would only depict the space between. (*Id.*) Additionally, there is no evidence in the record indicating that the spilled water necessarily traversed that space before spilling where Putscher fell.

Accordingly, if the lost footage depicted these facts, then the footage would be relevant and discoverable. However, if the footage did not depict these facts, then it would be irrelevant. As the record now stands, the court can only surmise that the footage may have contained relevant evidence. This is an insufficient basis to impose sanctions. *See Epstein v. Toys-R-Us*, 277 F. Supp. 2d at 1276–77 (stating that the movant "must at a minimum point to some facts indicating" that relevant evidence existed).

Putscher also argues that sanctions should be imposed because the lost footage would have most likely shown whether Smith's conducted timely sweeps of the area near her fall. This too is an insufficient basis to impose spoliation sanctions because this information is discoverable by other means. During the hearing Smith's stated that its floor sweeps are documented. There is no indication that Smith's internal records are unreliable. As a result, the court will not impose sanctions on this basis.

ACCORDINGLY, and for good cause shown,

IT IS ORDERED that Putscher's motion to compel and for spoliation sanctions (#12) is DENIED.

IT IS SO ORDERED.

DATED this 20th day of June, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE